UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PATRICK FINNEY and CHARLOTTE FINNEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:16-cv-491 |
| VOLVO GROUP NORTH AMERICA, LLC, | ) ) ) ) | Judge Aleta A. Trauger |
| Defendant. | ) | |

## MEMORANDUM & ORDER

Pending before the court is a Motion for Judgment on the Pleadings (Docket No. 21) filed by the defendant, Volvo Group North America, LLC ("VGNA"), to which the plaintiffs, Patrick and Charlotte Finney, have filed a Response in opposition (Docket No. 28), VGNA has filed a Reply (Docket No. 29), and the plaintiffs have filed a Sur-Reply (Docket No. 32). For the reasons discussed herein, the motion will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

On March 4, 2016, the plaintiffs filed this product liability action against VGNA and three other defendants. (Docket No. 1.) The Complaint is based on allegations that the plaintiffs were seriously and permanently injured in a wreck on March 9, 2015, while driving a 2012 Model VNL 780 Volvo truck, VIN number 4V4NC9KKXCN558644, designed, manufactured, and marketed by VGNA (the "Volvo Truck"). (*Id.*) The Complaint brings claims against VGNA for strict liability, negligence, recklessness, breach of express and implied warranties, and fraudulent misrepresentation under Tennessee law, and seeks $4,000,000 in compensatory damages and $7,000,000 in punitive damages from VGNA. (*Id.*) Specifically, the Complaint

1

alleges that the wreck was caused by a failure of the draglink component in the Volvo Truck's steering mechanism and that the plaintiffs' injuries were exacerbated by defects in the driver side airbags and the lack of passenger side airbags in the Volvo Truck.

The Complaint further alleges that, within days of the wreck, on March 20, 2015, the plaintiffs filed a report with the National Highway Traffic Safety Administration ("NHTSA"), indicating that the cause of the wreck was a failure of the Volvo Truck's draglink. (*Id.* at ¶¶ 39-40.) In April of 2015, an attorney then representing the plaintiffs informed VGNA of the draglink failure and notified VGNA that the draglink from the Volvo Truck was available for inspection, although VGNA did not respond. (*Id.* at 41-42.) The Complaint also alleges that, in May and June of 2015, the claims adjuster for the plaintiffs' insurance carrier twice contacted VGNA to ask if it would like to inspect the draglink and, again, VGNA did not respond. (*Id.* at ¶¶ 44-45.) The plaintiffs' insurance carrier then engaged the services of an engineering company, which sent a report to the insurance company in July of 2015, concluding that the wreck was caused by a failure of the Volvo Truck's steering system, resulting from corrosion of the draglink due to defects in its design. (*Id.* at ¶¶ 47-49.) At around the same time, NHTSA issued two recalls on other models of VGNA trucks (not including the Volvo Truck), based on similar problems with the draglink component in those vehicles. (*Id.* at ¶¶ 51-68.) According to the Complaint, NHTSA had also issued an earlier recall in 2010, which again implicated similar issues with draglink components in yet other VGNA truck models. (*Id.* at ¶¶ 69-70.) As a result, the Complaint alleges, the wreck involving the plaintiffs' Volvo Truck "was wholly and completely preventable and only caused because of defendants' negligent conduct, faulty product design, and intentional actions designed to minimize negative publicity about the defendants, minimize replacement costs, and not affect product sales." (*Id.* at ¶ 71.)

On April 14, 2016, the plaintiffs filed a Notice of Voluntary Dismissal, dismissing without prejudice their claims against all defendants in this action except VGNA. (Docket No. 12.)

On June 29, 2016, VGNA filed the currently pending Motion for Judgment on the Pleadings under Rule 12(c), seeking to dismiss this action on the grounds of judicial estoppel. (Docket No. 21.) According to VGNA, judicial estoppel is appropriate because, at the time of the wreck, the plaintiffs were in Chapter 13 bankruptcy proceedings before the United States Bankruptcy Court for the Western District of Tennessee (the "Bankruptcy Court") and were subject to an ongoing requirement to disclose all assets to the Bankruptcy Court - including any potential legal claims – but the plaintiffs did not disclose their potential claim against VGNA. (*Id*.) In the alternative, VGNA argues that the plaintiffs do not have standing to bring this action because only the bankruptcy trustee can pursue claims on behalf of the plaintiffs that arose during the bankruptcy proceedings. VGNA also filed a Memorandum in support. (Docket No. 22.) Attached to VGNA's Motion is the plaintiff's Voluntary Petition for Chapter 13 bankruptcy filed in the Bankruptcy Court on July 30, 2010 (Docket No. 21-1), the Bankruptcy's Court's November 4, 2010 Order confirming the plaintiffs' five-year Chapter 13 plan (Docket No. 21-3), the Bankruptcy Court's December 16, 2015 Order of Discharge for the plaintiffs' debts (Docket No. 21-5), and the Bankruptcy Court's January 14, 2016 Order closing the plaintiffs' bankruptcy case (Docket No. 21-7).

On July 13, 2016, the plaintiffs filed a Response in opposition to VGNA's Motion for Judgment on the Pleadings. (Docket No. 28.) The plaintiffs do not dispute the fact that they did not disclose their claims in this action to the Bankruptcy Court at any time, despite that they were in the process of making payments according to the bankruptcy plan at the time of the wreck.

Nor do the plaintiffs provide any evidence that they ever attempted to disclose their claims to the Bankruptcy Court or to the trustee of their bankruptcy estate. Rather, the plaintiffs argue that their failure to disclose was inadvertent.

In support of this position, the plaintiffs attach to their Response their own affidavits as well as the Affidavit of Stephen L. Hale, an attorney who advised the plaintiffs about their legal claim but who does not represent them in this action. (Docket Nos. 28-2, 28-3, and 28-4.) The affidavits make the following assertions:

- The plaintiffs understood that they had to report to the Bankruptcy Court any settlements they received from personal injury actions, but "no one told [them] that, if [they] were in an accident, [they] had to report the fact of the accident to the trustee or to the [Bankruptcy Court] and "it did not occur to [the plaintiffs] that [their] injuries could be considered an asset; if anything, they seemed to [them] a loss." (Docket No. 28-2 at ¶ 2; Docket No. 28-3 at ¶ 2.)

- The plaintiffs were professional truck drivers who were familiar with truck mechanics and, after the wreck, they suspected that the loss of steering they experienced might have been related to a failure in the draglink. Thus, they investigated this theory and also sought legal counsel to determine whether they had a basis for a lawsuit. (Docket No. 28-2 at ¶¶ 3-4; Docket No. 28-3 at ¶¶ 3-4.)

- Stephen Hale, who had assisted the plaintiffs with other unrelated legal matters in the past, agreed to investigate the wreck, without their signing a retainer, and he consulted with product liability attorneys about this matter. In May of 2015, Mr. Hale informed the plaintiffs that the accident was likely due to a repair incident rather than to any fault

of VGNA and that the plaintiffs, therefore, did not have a legal claim against VGNA. (Docket No. 28-2 at ¶¶ 5-6; Docket No. 28-3 at ¶¶ 5-6; Docket No. 28-4.)

- The plaintiffs then sought a second opinion from attorney Brandt McMillan at the law firm Tune, Entrekin, and White. In June of 2015, Mr. McMillan declined to represent the plaintiffs in this matter, without explanation. (Docket No. 28-2 at ¶ 7; Docket No. 28-3 at ¶ 7.)

- On December 11, 2015, the plaintiffs spoke with attorney Steve Cohen, who agreed to investigate the matter. In February of 2016, after the bankruptcy case had already been closed, Mr. Cohen referred this action to Kinnard, Clayton & Beverage, the plaintiffs' current counsel. (Docket No. 28-2 at ¶ 8; Docket No. 28-3 at ¶ 8; Docket No. 33.)

- "Before February of 2016, [the plaintiffs] did not know that [they] had any cause of action or right of recovery against [VGNA]. Therefore, even if [they] had been of the understanding that [they] were obligated to report legal claims or causes of action before they resulted in settlement or recovery, there was nothing to disclose because [their] investigation thus far had indicated that [they] had no factual basis for a lawsuit against [VGNA]. That was [their] understanding until February of 2016, when [they] were referred to [their] current counsel who determined that [they] did have a claim against [VGNA]. When [their] understanding of the underlying facts changed, and [they] came to believe that [they] did have a legal cause of action against Volvo, [their] bankruptcy case was already closed." (Docket No. 28-2 at ¶ 9; Docket No. 28-3 at ¶ 9.)

On July 22, 2016, VGNA filed a Reply. (Docket No. 29.) In their Reply, VGNA argues that, in deciding this Motion for Judgment on the Pleadings, the court should not consider the additional evidence presented by the plaintiffs in their Response, although the court may

consider any documents referenced in the Complaint or any public filings such as those before the Bankruptcy Court.

On July 28, 2016, the plaintiffs filed a Sur-Reply. (Docket No. 32.) The plaintiffs argue that it is appropriate for the court to look to their additional evidence in determining the question of judicial estoppel and also state that, "[i]f this Court must convert [VGNA's] motion to one for summary judgment in order to consider all relevant facts, Plaintiffs urge it do so." (*Id*. at p. 1.)

## **LEGAL STANDARD**

While the defendant has filed a Motion for Judgment on the Pleadings, the court finds that, in the context of a judicial estoppel determination, it is appropriate to treat this matter as a motion for summary judgment and consider all relevant extrinsic material submitted by the parties. *See Sovik v. Ducks Unlimited, Inc.*, No. 3:11-cv-08, 2011 WL 1397970 (M.D. Tenn. Apr. 13, 2011) (Trauger, J.) (citing *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010)). This is especially true because, as explained more fully below, once a defendant has met its burden to establish that judicial estoppel may be appropriate because a plaintiff has failed to disclose his claim in a prior bankruptcy proceeding, despite having knowledge of the factual basis for the claim and motive to conceal, the burden then shifts to the plaintiff to put forth evidence showing a lack of bad faith. *See White*, 617 F.3d at 477 (citing *Lewis v. Weyerhauser Co.*, 141 F. App'x 420 (6th Cir. 2005); *see also Piper v. Dollar Gen. Corp.*, No. 3:11-cv-554, 2011 WL 4565432 (M.D. Tenn. Sept. 29, 2011). The plaintiffs in this action, then, should be afforded the opportunity to have the court consider all evidence they have placed in the record to support their argument that their omission to the Bankruptcy Court was inadvertent. Such evidence would not have been necessary for the plaintiffs to include in their

pleadings, prior to VGNA's assertion of a judicial estoppel defense. Accordingly, the court will apply the legal standard for summary judgment under Rule 56 as stated below.

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conversely, to win summary judgment as to its own claims, a moving plaintiff must demonstrate that no genuine issue of material fact exists as to all essential elements of her claims. "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

A debtor in a bankruptcy proceeding has an ongoing duty to disclose to the bankruptcy court all assets, including potential legal claims that arise after the bankruptcy proceedings have commenced but before the case has been closed. See 11 U.S.C. § 521(a)(1); 11 U.S.C. § 1306(a)(1); *Lewis*, 141 F. App'x at 424 ("It is well settled that a cause of action is an issue that must be scheduled under § 521 . . . . Moreover, the duty of disclosure is a continuing one and a debtor is required to disclose all potential causes of action."). Accordingly, the Sixth Circuit has recognized that judicial estoppel may be appropriate where a debtor has failed to disclose a legal claim to the bankruptcy court and then later seeks to assert that claim in a different matter. *See White*, 617 F.3d 617 F.3d at 476 (holding that the doctrine of judicial estoppel prevents a party from pursuing a position where it has previously prevailed on a contrary position in a prior proceeding) (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)).

In order for judicial estoppel to be warranted in this context, the defendants to the latter action must first show that the plaintiff did not disclose the claim in a prior bankruptcy proceeding, that the bankruptcy court adopted that contrary position as a preliminary matter or as part of a final disposition, and that the omission did not result from mistake or inadvertence. *Id*. at 478; *Lewis*, 141 F. App'x at 425. An initial showing that there was no mistake or inadvertence requires establishing that the plaintiff had knowledge of the factual basis underlying his claim and that there was motive for concealment. *White*, 617 F.3d at 476; *Lewis*, 141 F. App'x at 425; *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002). Motive for concealment has been found simply by the very nature of the bankruptcy proceedings, in which a petitioner would necessarily stand to benefit from not reporting assets, so as not to have those assets transferred to his creditors. *White*, 617 F.3d at 478-79; *Piper*, 2011 WL 4565432, at *5-6. Once the defendant has

met his burden, the burden shifts to the plaintiff to show a lack of bad faith in order to avoid the application of judicial estoppel. *See Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *White*, 617 F.3d at 477; *Piper*, 2011 WL 4565432. A lack of bad faith may be found where the plaintiff has made *efforts* to inform the bankruptcy court or the trustee of his bankruptcy estate about his claim prior to the defendant's assertion of a judicial estoppel defense, even if those efforts fall short of an official disclosure in the bankruptcy schedules. *See Eubanks*, 385 F.3d at 897-98; *Lewis*, 141 F. App'x at 426; *White*, 617 F.3d at 480. Moreover, establishing a lack of bad faith requires a plaintiff to put forth evidence that he has taken affirmative steps to rectify his omission, and the Sixth Circuit has expressly held that an affidavit by a plaintiff stating that his omission was unintentional is insufficient. *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 315 (6th Cir. 2013).

In this action, it is undisputed that the plaintiffs did not disclose their claim against VGNA to the Bankruptcy Court. The plaintiffs also had a clear motive for concealment, in order to avoid prolonging their bankruptcy proceedings or sharing any potential judgment against VGNA with their creditors. The plaintiffs have not put forth any evidence that they attempted to notify the bankruptcy court or the trustee of their potential claims, or raise with the bankruptcy court the question of how these claims might affect their bankruptcy case, prior to its close. The plaintiffs argue, however, that they lacked knowledge of the factual basis for their claim while the bankruptcy proceedings were underway, because they relied on the advice of counsel that they did not have a viable legal claim and, therefore, their omission was inadvertent. The court finds this position untenable. There is no requirement that the plaintiffs understood the full legal theory for their claim, or that they had retained counsel to advance this theory, in order to be obligated to disclose the claim. The plaintiffs cite a prior case from this court, *Sovik v. Ducks*

*Unlimited,* as an example of a case where a plaintiff/debtor's nondisclosure of their claim to the bankruptcy court was deemed inadvertent, even though the plaintiff was aware of the basic facts underlying the claim, due to a lack of knowledge of the law. *Sovik* is factually distinguishable, however, because it involved a Fair Labor Standards Act claim and the court found that, while the plaintiff knew he had been paid a salary by his former employer, he was reasonably unaware that he was entitled to overtime pay and that "it is unrealistic to expect laypersons to automatically know when they have been misclassified by their employers." 2011 WL 1397970, at *3. The court's finding of inadvertence in *Sovik* was further supported by the fact that the plaintiff did not merely wait until after his bankruptcy case had closed to file his claim, but waited yet an additional 15 months, during which time the statute of limitations expired on some of his potential damages, further demonstrating a lack of intentional action on the part of the plaintiff. *Id*. at *3-4.

In this action, by contrast, the plaintiffs admit that they suspected right away that the wreck may have been caused by a defect in the draglink of the Volvo Truck, and it is not unrealistic to expect a plaintiff – especially professional truck drivers such as these – to know that an automobile defect causing a wreck might be actionable. Indeed, despite the alleged advice they received from counsel indicating that they did not have a legal claim, the plaintiffs continued to pursue their claim throughout the course of their bankruptcy proceedings.[1] By the plaintiffs' own admission, they did not, in fact, follow the advice of counsel to give up on their potential legal claims against VGNA, nor was there any intervening occurrence after the close of the bankruptcy case to revive their intent to pursue their legal claims. To the contrary, the

---

[1] Accordingly, the court need not – as the plaintiffs suggest (Docket No. 32, p. 2) – conduct an *in camera* review of the attorney-client communication to the plaintiffs from Mr. Hale in May 11, 2015 in order to decide this motion.

plaintiffs' admissions show an ongoing pursuit of their legal claims through investigation and efforts to retain counsel, including meeting with Mr. Cohen on December 11, 2015, while the bankruptcy proceedings were still ongoing. The plaintiffs then filed this action within mere weeks after the bankruptcy case was closed.

Moreover, the plaintiffs admit that they were aware that any legal settlements needed to be disclosed to the Bankruptcy Court. This fact alone should have been sufficient to put them on notice of their obligation to inform the Bankruptcy Court that they were pursuing a potential legal action against VGNA. While the plaintiffs are correct that they were under no obligation to notify the Bankruptcy Court about the mere existence of an accident or injury that represented only a loss to them, this clearly does not extend to a situation where they were actively investigating and contemplating a lawsuit seeking millions of dollars in damages.

Finally, the plaintiffs argue that dismissing this action would be inequitable because it would permit the defendants to avoid liability for what is allegedly a significant product defect leading to substantial damages, while failing, in any event, to offer any redress to the plaintiffs' bankruptcy creditors. The plaintiffs cite *Richardson v. United Parcel Service* as an example of a case where judicial estoppel was denied in similar circumstances due to unfairness to creditors and, instead, the bankruptcy trustee was permitted to join the action. *Richardson*, however, was decided by a district court outside of the Sixth Circuit and, moreover, is factually distinguishable from this case. In *Richardson*, the plaintiff's bankruptcy proceedings were ongoing, assets had not yet been distributed, and the trustee was available to join the action. 195 B.R. 737, 739 (E.D. Mo. 1996). In a similar case before this court, when judicial estoppel was raised as a defense,

the trustee in an ongoing bankruptcy proceeding was permitted to take over the plaintiff's claim. *See Piper*, 2011 WL 4565432.[2]

In sum, the court finds that the plaintiffs took an inconsistent position in their bankruptcy action that was relied on by the Bankruptcy Court in closing their bankruptcy case, and there is no evidence to support a finding of mistake, inadvertence, or lack of bad faith. The plaintiffs' action cannot be saved in this instance by equitable considerations. Accordingly, the plaintiffs are judicially estopped from pursuing their claims against VGNA, and this action will be dismissed. Because this action is being dismissed on grounds of judicial estoppel, the court need not address VGNA's argument that the plaintiffs do not have standing.

## **CONCLUSION**

For the foregoing reasons, the Motion for Judgment on the Pleadings is hereby **GRANTED** and this action is **DISMISSED**.

Entry of this Order shall constitute judgment in the case.

It is so **ORDERED**.

Enter this 5th day of December 2016.

_____
ALETA A. TRAUGER
United States District Judge

---

[2] It is not for this court to opine whether the plaintiffs here might seek to reopen their Chapter 13 case in the Bankruptcy Court and involve the Chapter 13 Trustee as substitute plaintiff in an action against VGNA.